IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case No. 3:23-cv-01092 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair Newbern |

**DECLARATION OF ALISA COLEMAN
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Alisa Coleman, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Chief Operating Officer of ABKCO Music, Inc. ("ABKCO"). I joined ABKCO in 1985 and I have held various positions throughout my 38-year career at ABKCO, including my current position. As COO, I look after many aspects of ABKCO's business, but my primary responsibility is overseeing and managing the licensing of our musical compositions, including licenses involving lyrics. Outside of my role at ABKCO, I have held positions at various music publishing associations and societies, including acting as President of the Association of Independent Music Publishers ("AIMP"), serving as a member of the Board of Review at the American Society of Composers, Authors and Publishers ("ASCAP"), and most recently serving as Chair of the Board of Directors at the Mechanical Licensing Collective ("MLC").

2. I submit this Declaration on behalf of Plaintiff ABKCO in support of Plaintiffs' Motion for Preliminary Injunction.

3.     I have personal knowledge of the information contained in this Declaration through my employment with ABKCO and based on my review of the documents and websites referenced below. If called upon as a witness, I could and would testify competently to the information contained herein.

## ABKCO AND ITS COPYRIGHTED MUSICAL COMPOSITIONS

4.     ABKCO is a leading independent music publisher. ABKCO was founded in the late 1950s and is one of the last remaining family-owned and operated music publishing companies. It owns and/or controls exclusive rights with respect to copyrighted musical compositions written by Sam Cooke, Mick Jagger and Keith Richards (of The Rolling Stones), Ray and Dave Davies (of The Kinks), Bobby Womack, and Rudy Martinez (of Question Mark & The Mysterians), among many others. ABKCO's copyrights in these compositions protect both their lyrics and the underlying melodies, harmonies, and rhythms.

5.     ABKCO represents and supports its hundreds of songwriters by fostering the creation of musical compositions, promoting their works, protecting their copyrights, and ensuring that they receive proper remuneration for their creative efforts, through the commercial licensing of their copyrighted works, including song lyrics.

6.     In this case, ABKCO is claiming infringement of the 25 musical compositions listed at lines 41-65 in Exhibit A to the Complaint, ECF No. 1-3 (the "ABKCO Works"), including the lyrics contained in those works. The ABKCO Works include such classics as "You Send Me" by Sam Cooke (as made famous by Sam Cooke), "Wild Horses" by Mick Jagger and Keith Richards (as made famous by The Rolling Stones), and "It's All Over Now" by Shirley Womack and Bobby Womack (as made famous by The Valentinos and The Rolling Stones).

7. ABKCO owns the entirety, or is the exclusive licensee in the United States, of one or more of the rights provided in 17 U.S.C. § 106 for the ABKCO Works. ABKCO possesses and exploits its exclusive rights, among other things, to reproduce and/or distribute the ABKCO Works to the public, including the lyrics contained in those Works, and to license these exclusive rights, including the exercise of these rights over the internet.

8. ABKCO's copyrights in its extensive catalog of musical compositions are central to its business as a music publisher. ABKCO protects its copyrights for the ABKCO Works through registration with the U.S. Copyright Office, by executing signed agreements pursuant to which ABKCO owns or controls exclusive rights under copyright to any composition it exploits, and through various other means.

9. The copyrights to the ABKCO Works have been duly registered with the U.S. Copyright Office, and the corresponding copyright registration numbers are listed in Exhibit A to the Complaint. Some of the copyright registrations to the ABKCO Works identify ABKCO as a named claimant. Where the copyright registrations to the ABKCO Works do not identify ABKCO as a named claimant or author, ABKCO has acquired its ownership interest in the compositions either by acquiring ownership or an exclusive license through its acquisition of, or merger with, another entity (i.e., as a successor-in-interest to the original named copyright claimant); and/or by acquiring ownership or an exclusive license from a third party via written agreement. ABKCO has the right to assert claims for infringement of the ABKCO Works in this case.

**ABKCO'S LICENSING WITH RESPECT TO ITS MUSICAL COMPOSITIONS**

10. ABKCO regularly enters into licensing agreements relating to the musical compositions in its extensive catalog, collects the income from these agreements, and

compensates its songwriters accordingly.

11. ABKCO licenses the ABKCO Works and various other musical compositions, including their lyrics, for use in sound recordings, public performances, printed sheet music and musical notation websites and applications, commercials, advertisements, motion pictures, television shows, karaoke products, greeting cards, books and magazines, various digital services, social media platforms, lyrics aggregators, and/or lyrics websites. Through these licensing arrangements and others, ABKCO and its licensing partners disseminate ABKCO's compositions to the public and foster the enjoyment of those works.

12. ABKCO also frequently enters into licenses relating to the lyrics to the ABKCO Works in particular. That includes licenses for the lyrics to the ABKCO Works to be displayed on the internet, including through licenses with various websites and other online services, for example, lyric aggregators (such as MusixMatch.com and LyricFind.com), lyric websites (such as Genius.com), and other digital services and platforms (such as Apple Music, Facebook, and Instagram). Other licenses that involve lyrics include those relating to greeting cards (such as Hallmark and American Greetings), karaoke products (such as Touchtunes and Singa), books and novels (such as Stephen King's *11/22/63* and Jacqueline Woodson's *Brown Girl Dreaming*) and merchandise (such as Lyric Culture's apparel and jewelry products). In addition, ABKCO also has a longstanding license with Alfred Music that includes lyrics. Alfred Music produces physical and digital sheet music and other types of musical notations such as guitar tablatures in the form of songbooks, personality folios, piano/vocal folios, among others. ABKCO's licenses with lyric aggregators and Alfred Music permit these licensees to further license to third parties.

13. The revenues from these various licensing agreements are important to ABKCO's ability to represent and serve songwriters and constitute a significant source of income for those

songwriters.

14. In light of the critical concern over protecting the rights of ABKCO's songwriters and the works they create, ABKCO's agreements with these licensees frequently include requirements that these licensees designate the relevant music publishers and songwriters alongside the licensed lyrics, as well as include copyright notices, to ensure that users of these services and products understand the authors and publishers of the lyrics.

15. In order to respect the artistic creations and choices of our songwriters, these licenses do not permit licensees to alter ABKCO's lyrics, combine ABKCO's lyrics with lyrics to other songs, or otherwise exploit the lyrics in a manner not contemplated by the agreements.

16. It is important to note, however, that ABKCO does not grant every license request that it receives. Each license request is carefully reviewed and there are many factors that are considered before granting or denying a license request, such as, the nature and scope of the use of the composition or its lyrics, the term and territory, the license fee, and whether it is a songwriter-supported project or not, among many other factors.

17. When ABKCO's lyrics are exploited without our permission or in a manner that violates our rights or licensing agreements, ABKCO enforces its rights in those works, through individual action and/or through ABKCO's trade organization, the National Music Publishers' Association ("NMPA"). For example, when a karaoke company was using ABKCO's lyrics without a license in the 1990s, ABKCO brought a successful copyright infringement claim against that company, which included the grant of a preliminary injunction, among other remedies (*ABKCO Music, Inc. v. Stellar Records, Inc.*).

18. For purposes of this case, I have confirmed that the lyrics to the ABKCO Works available on the lyric aggregator LyricFind.com are genuine and materially accurate.

19. Anthropic has never licensed or attempted to license the ABKCO Works or any other of ABKCO's musical compositions for any purpose.

**ANTHROPIC'S INFRINGEMENT AND HARM TO ABKCO**

20. I have visited Anthropic's website https://claude.ai/ and accessed Anthropic's Claude AI model through that website. I have requested lyrics to various ABKCO Works and have received various output from Claude copying the lyrics from those ABKCO Works, as well as reviewing other Claude output that similarly copies lyrics from other ABKCO Works.

21. Anthropic's unlicensed use of lyrics to ABKCO Works in connection with Anthropic's AI technology severely harms the value and market for these works. This harm is wide-ranging. In addition to ABKCO's losing out on licensing revenues and our songwriters' losing out on royalties, the licensing market and demand for licenses are undermined, the value of ABKCO's musical compositions and lyrics are immeasurably diminished, and ABKCO's competitive position and ability to enter into favorable licenses is undercut. Together, these harms jeopardize ABKCO's licensing abilities and damage ABKCO in ways that cannot be quantified.

22. Anthropic's unauthorized exploitation of lyrics to ABKCO Works as part of Anthropic's AI technology irreparably injures ABKCO in many other ways.

23. For instance, ABKCO and our songwriters deeply value our right and ability to control the exploitation of our copyrighted works, including the ABKCO Works. When Anthropic engages in unauthorized uses of the ABKCO Works and exploits those works to its own ends without permission, it wrests this critical control away from ABKCO and our songwriters, depriving us of the ability to decide how and where these works are used, in ways that are enormously damaging and that cannot be undone.

24. Another important concern to ABKCO and our songwriters is ensuring proper credit and attribution when our copyrighted works are exploited by others. Songwriters invest greatly of themselves into the works they create, and ABKCO goes to great lengths to ensure that our songwriters receive the proper recognition and accompanying goodwill for their artistic creations. When Anthropic uses ABKCO's compositions without authorization and fails to credit the songwriter who created the work or ABKCO as the publisher, that causes additional irreparable harm.

25. In a similar vein, ABKCO and our songwriters are also deeply harmed when Anthropic's AI programs generate and output versions of ABKCO's lyrics that have been altered or mixed with other lyrics, or when the AI programs misattribute other lyrics to our songwriters that they did not create. For example, Anthropic's AI program generated an offensive mashup of the lyrics to Sam Cooke's "A Change Is Gonna Come" (an anthem of the civil rights movement that is preserved in the Library of Congress' National Recording Registry) and Cardi B's "WAP," in a manner that is completely inconsistent with the message and intent of the original Sam Cooke composition and that undermines the integrity of that classic work. Severe reputational harm results when Anthropic's AI output distorts or misstates the lyrics to the ABKCO Works in these ways.

26. Anthropic's unpermitted use of ABKCO's lyrics also harms ABKCO's position in the licensing market for lyrics, as discussed in more detail above. Among other harms, prospective licensees are less likely to enter into agreements in the first place, while existing licensee are less likely to maintain their licenses or enter into new ones.

27. In terms of additional harm, Anthropic's ongoing unauthorized use of the lyrics to the ABKCO Works is also likely to irreversibly undermine ABKCO's leverage with respect to

7
Case 3:23-cv-01092   Document 43   Filed 11/16/23   Page 7 of 9 PageID #: 266

negotiating potential licenses with AI developers like Anthropic. If Anthropic continues to exploit the ABKCO works for free, it has no reason to pay for a license, and if such unlicensed exploitation becomes entrenched in the AI industry, ABKCO's ability to effectively negotiate any such licenses will be permanently diminished.

28. Lastly, ABKCO's relationships with the songwriters we represent is central to our business as a music publisher. Our core mission is advocating for and representing our songwriters, including protecting the compositions they have created by, among other things, enforcing our copyrights in those works. If Anthropic is permitted to continue to violate those rights, that will cause permanent and lasting damage to our relationship and reputation with our songwriters in ways that will undermine our business as a music publisher.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Alisa Coleman

Executed this 14 day of November, 2023 in New York, NY.

# CERTIFICATE OF SERVICE

       I hereby certify that on November 16, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Aubrey B. Harwell III
Nathan C. Sanders
Olivia R. Arboneaux
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
tharwell@nealharwell.com
nsanders@nealharwell.com
oarboneaux@nealharwell.com

Andrew Gass
Joe Wetzel
LATHAM & WATKINS, LLP
505 Montgomery St., Suite 2000
San Francisco, CA 94111
andrew.gass@lw.com
joe.wetzel@lw.com

Allie Stillman
LATHAM & WATKINS, LLP
1271 Avenue of the Americas
New York, NY 10020
alli.stillman@lw.com

Sy Damle
LATHAM & WATKINS, LLP
555 Eleventh Street, NW, Suite 1000
Washington D.C. 20004
sy.damle@lw.com

                                             *s/ Steven A. Riley*