# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHROPIC PBC, <br><br> Defendant. | Case No. 3:23-cv-01092 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

## JOINT PROPOSED INITIAL CASE MANAGEMENT ORDER

Pursuant to this Court's Local Rule 16.01, counsel for all parties have met and conferred to discuss the matters addressed in Federal Rule of Civil Procedure 26(f). Agreements reached by counsel or the parties' differing positions are memorialized in this joint proposed initial case management order, which reflects the case management preferences of Magistrate Judge Newbern and the presiding district judge, Chief Judge Waverly D. Crenshaw, Jr.

### A. JURISDICTION:

Plaintiffs' Position: The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a). The Court has specific personal jurisdiction over Defendant Anthropic PBC ("Anthropic") pursuant to Tenn. Code Ann. § 20-2-214, because, among other things, Anthropic transacts business in Tennessee; intentionally markets and supplies its services to consumers in Tennessee, including through its highly interactive website; directs infringing activities at users based in Tennessee; enables, assists, and induces Tennessee users to directly infringe Plaintiffs' copyrighted works; and performs acts directed at and causing harm in Tennessee.

Anthropic is wrong that this Court lacks personal jurisdiction and that this district is an improper venue, and Anthropic's Motion to Dismiss or Transfer should be denied in full, as

Plaintiffs will explain in detail in their forthcoming Opposition to Anthropic's Motion to Dismiss or Transfer.

Defendant's Position: As Anthropic explained in its pending Motion to Dismiss or Transfer (ECF No. 55), this Court lacks personal jurisdiction over Anthropic and this district is an improper venue.

This case does not belong in the Middle District of Tennessee as a matter of law. It should be litigated instead—if at all—in the Northern District of California, where Anthropic is based and where Plaintiffs themselves assented to litigate their claims when their agents used Anthropic's platform and agreed to its terms of service, which in turn required them to litigate any resulting disputes in Northern California. In contrast, neither Anthropic nor this case has any relevant connection to the state of Tennessee. Federal law is clear that the mere operation of a platform that is generally accessible online—like Anthropic's generative AI model—does not suffice to establish personal jurisdiction or venue, yet that is the only Tennessee tie Plaintiffs allege. There is no dispute that Anthropic directed the development and training of its AI model from its California headquarters; it has never directed its marketing or operations at Tennessee or at Tennessee users. And there is no allegation that any of the model's allegedly infringing "outputs" were made, received, or displayed in Tennessee. Consequently, Anthropic lacks the requisite "minimum contacts" with the state of Tennessee to establish either personal jurisdiction or venue under 28 U.S.C. §§ 1400(a) and 1391.

 **B.**   **BRIEF THEORIES OF THE PARTIES:** *These statements shall briefly summarize the parties' positions and shall not be a recitation of the pleadings or argument of the claims.*

Plaintiffs' Position: Plaintiffs (collectively, "Publishers") filed this lawsuit to address Anthropic's systematic and widespread infringement of their copyrighted song lyrics. In the process of building and operating artificial intelligence ("AI") models, Anthropic unlawfully

2

copies and disseminates vast amounts of copyrighted works—including the lyrics to myriad musical compositions owned or controlled by Publishers. By copying and distributing Publishers' lyrics in this manner without permission, Anthropic violates Publishers' copyrights, unlawfully enriches itself at the expense of Publishers and songwriters, and diminishes the inherent value of their works. Anthropic is acutely aware that it is copying wide swaths of copyrighted materials without permission and without any legal authority to support its fair-use defense, yet persists in its illegal conduct in order to reap multibillion-dollar valuations. Anthropic could choose to license the raw materials it requires to create its product but would rather steal them to reduce its costs. This makes Anthropic's conduct willful.

Publishers assert four claims against Anthropic. First, Publishers allege that Anthropic directly infringes Publishers' copyrighted musical compositions by reproducing these works in training datasets and as part of its AI models and by reproducing, distributing, displaying, and preparing derivative works based on these works as the output of its AI models. Second, Publishers allege that Anthropic contributorily infringes Publishers' copyrighted works. Anthropic is aware of its licensees and users' infringing activity, but nevertheless facilitates and encourages that infringement by providing access to its infringing AI models through its website and commercial application programming interface ("API") and by hosting and transmitting through those models content it knows to be infringing. Third, Publishers allege that Anthropic vicariously infringes Publishers' copyrighted works, because Anthropic has the right and ability to supervise and control the infringing outputs of its AI models but fails to take reasonable steps to curb that infringing activity, and because Anthropic profits from that failure. Fourth, Publishers allege that Anthropic removes or alters copyright management information in violation of 17 U.S.C. § 1202, because Anthropic intentionally copies and disseminates Publishers' copyrighted lyrics through its AI

models while omitting or altering the corresponding song titles, songwriter names, copyright ownership information, and other copyright management information.

Contrary to Anthropic's claims, Publishers do not seek to have the Court "rush to judgment" nor do Publishers request "outlier" relief. Given the irreparable harm caused to Publishers by Anthropic's ongoing infringement, Publishers have requested a narrowly tailored preliminary injunction to stem that harm while the case proceeds. And although the AI technology involved in this case may be complex, the legal issues presented are straightforward and Anthropic's defenses stated below are baseless. In short, Anthropic cannot pin the blame for its infringement on users of its AI models, when it is Anthropic that chose to copy Publishers' works as input to train those models and when it is Anthropic that controls the output of those models. Likewise, Anthropic cannot meet its burden of proving that its exploitation of Publishers' works constitutes fair use, as explained in detail in Plaintiffs' Motion for Preliminary Injunction. Anthropic's rote copying diminishes the value of Publishers' works by taking for free what others would and do license; Anthropic's insistence that wholesale theft does no harm to the market for copyrighted works is absurd, and its contention that there is and can never be a market for works to train text-generative AI models is wholly conclusory.

Because Anthropic directly, contributorily, and vicariously infringes Publishers' copyrights, and omits or alters copyright management information, Publishers seek judgment in their favor on each of these claims, preliminary and permanent injunctive relief, statutory and/or actual damages, and additional relief as detailed in Publishers' complaint.

Defendant's Position: This lawsuit against Anthropic is one of nearly two dozen cases of first impression making their way through the federal courts, all of which raise similar copyright infringement claims against other generative AI companies. The Court should decline Plaintiffs'

invitation to rush to judgment of that issue here based on Plaintiffs' complaint and outlier preliminary injunction motion, which do not show that Anthropic itself has ever copied or infringed on Plaintiffs' works in any way that copyright law condemns.

Plaintiffs' claims for direct, contributory, and vicarious copyright infringement all fail for at least two reasons. *First*, Plaintiffs themselves (and their agents)—not Anthropic—are the only users who prompted "outputs" from Anthropic's AI model that Plaintiffs allege copied their works. Anthropic itself cannot be directly liable for those acts because it did not engage in the requisite volitional conduct. Also, it is blackletter law that a copyright holder's reproduction of its own work cannot support any direct, contributory, or vicarious infringement claim against Anthropic. *See* 17 U.S.C. § 106(1). *Second*, Anthropic's alleged intermediate use of Plaintiffs' song lyrics to train its generative AI models is transformative, limited in scope, unrelated to the creative core of the works, and neither has nor will adversely impact any existing or potential legitimate market for Plaintiffs' copyrighted works. There is not currently, nor is there likely to be, a workable market for licenses to use of copyrighted works to train general text-generative AI models. And Anthropic's inclusion of copyrighted works in the training corpus does not interfere with any other market for Plaintiffs' lyrics, for example, in karaoke programs or lyric-aggregating websites. The inclusion of Plaintiffs' works in the training corpus is therefore a fair use, which is not copyright infringement. 17 U.S.C. § 107.

Plaintiffs' claim that Anthropic violated the law by allegedly removing or altering copyright management information from lyrics fails because—even assuming they can show that such information has been removed or altered—Plaintiffs cannot prove that Anthropic acted with the requisite intent. Plaintiffs' baseless claims should be rejected, and judgment entered in Anthropic's favor.

**C.   ISSUES RESOLVED:** *State all agreements reached by counsel and not otherwise addressed by this Order, including agreements as to jurisdiction, venue, and other matters as appropriate.*

The parties have reached agreement on the briefing schedule for Plaintiffs' Motion for Preliminary Injunction, ECF No. 40, and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer, ECF No. 55, as entered by the Court, ECF No. 57; on a Proposed Stipulated Protective Order, which the parties have jointly submitted to the Court, ECF No. 60-1, and on an ESI Protocol to govern discovery in this matter, which the parties submit as Exhibit A with this Proposed Initial Case Management Order.

**D.   ISSUES STILL IN DISPUTE:** *Briefly summarize all issues still in dispute including, for example, liability and damages.*

Plaintiffs' Motion for Preliminary Injunction, ECF No. 40, and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer, ECF No. 55, are in the process of being briefed, pursuant to the Court-ordered schedule. More broadly, the issues of liability and damages also remain in dispute.

The parties are unable to agree on the appropriate timing to commence general discovery—that is, discovery sought outside of the parties' current efforts to litigate Plaintiffs' Motion for Preliminary Injunction—pending the Court's ruling on Anthropic's motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction and/or improper venue, or in the alternative to transfer venue to the Northern District of California.

Plaintiffs' Position: It is Plaintiffs' position that general discovery should commence following the completion of the parties' briefings on the pending motions and no later than March 22, 2024, per the parties' joint proposed schedule detailed below. "The default position in the court's local rules and the scheduling order is that discovery is not stayed pending dispositive motions." Order Denying Motion to Stay Discovery, ECF No. 71, *Rock & Load Music Grp., Inc.*

*v. BNL Consulting, LLC*, No. 3:17-cv-01198 (M.D. Tenn. Dec. 20, 2017); *see also* Local Rule 16.01(g) (providing that "[d]iscovery is not stayed, including during the pendency of dispositive motions, unless specifically authorized . . . by order of the Court"); *United States ex rel. Cutler v. Cigna Corp.*, No. 3:21-CV-00748, 2023 WL 2552340, at *2 (M.D. Tenn. Mar. 3, 2023) (explaining that in the Middle District of Tennessee "a stay of discovery is the exception, not the rule, even when a dispositive motion is pending").

Anthropic has presented no compelling reason to deviate from this Court's well-established rule.[1] As in *Rock & Load Music Group, Inc. v. BNL Consulting, LLC*, "[e]ven if part of the case is transferred to another district any discovery on the merits will not be wasted," because "rulings on the dispositive motions may take some time and to delay all discovery during that period would only prolong the cause in the long run." Order Denying Motion to Stay Discovery, *supra*. Courts in the Middle District of Tennessee recognize that "to appropriately use judicial resources," plaintiffs and defendants alike "must continue to pursue their case so that they are prepared for

---

[1] The cases cited by Anthropic are inapposite. In *Harmer v. Cannata*, the court stayed discovery because the pending motion to dismiss for lack of subject matter jurisdiction "raise[d] issues regarding the proper parties to the action . . . and the appropriate claims to be pursued that will directly affect the scope of discovery." No. 3:22-cv-00976, 2023 WL 2228985, at *1 (M.D. Tenn. Feb. 24, 2023). But there is no suggestion here that allowing general discovery to go forward would advance litigation that cannot proceed in *any* federal court, or that the scope of discovery would differ between the Middle District of Tennessee and the Northern District of California. In *Solomon v. Solomon*, the court's decision to stay discovery pending a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim was "[b]ased on the unique circumstances of this case, including that two of defendants who challenge subject matter jurisdiction are recent high school graduates." No. 3:21-0498, 2022 WL 1460364, at *2 (M.D. Tenn. Feb. 15, 2022). And in *Bridgestone Americas, Inc. v. IBM*, which Anthropic cites as collecting cases illustrative of the court's power to stay discovery pending dispositive motions, the district court in fact surveyed cases *denying* such motions. No. 3:13-CV-1196, 2016 WL 11786196, at *2 (M.D. Tenn. July 6, 2016). The reasoning in *Bridgestone* should have equal force here: "Because these types of [Rule 12] motions do not go to the merits of the case, but only to the forum in which it proceeds, there is even less reason to stay discovery pending their outcome." *Id.* (quoting *Charvat v. NMP, LLC*, No. 2:09-CV-209, 2009 WL 3210379, at *2 (S.D. Ohio Sept. 30, 2009)).

trial if a dispositive motion fails" and that "discovery gives both sides a better understanding of their own position and that of their adversary, such that settlement may be more likely." *Cutler*, 2023 WL 2552340, at *2. It is most efficient for the Court to allow general discovery to proceed.[2]

The parties cannot predict when the Court will rule on the pending motions. As the Court recognized at the November 29, 2023 scheduling conference, this litigation will proceed—either in the Middle District of Tennessee or in the Northern District of California—however those pending motions are resolved. Accordingly, Publishers wish to continue preparing their complete case in an orderly fashion. In line with this Court's practice and precedent, Publishers respectfully submit that discovery should not be stayed pending resolution of Anthropic's motion to dismiss.

Defendant's Position: It is Anthropic's position that general discovery (other than discovery necessary to litigate Plaintiffs' preliminary injunction motion[3]) and other pretrial deadlines should commence only after the Court rules on Anthropic's pending motion to dismiss for lack of personal jurisdiction, at which point the parties should confer promptly and agree upon a schedule for all remaining case deadlines. This Court has "broad discretion and power to limit or stay discovery until preliminary questions which may dispose of the case are answered."

---

[2] Discovery related to Plaintiffs' Motion for Preliminary Injunction is already underway. On December 4, 2023, Anthropic served its first set of document requests on Plaintiffs "in connection with the preliminary injunction briefing schedule ordered by the court on December 1, 2023." Notably, Anthropic served these requests weeks after Plaintiffs filed their Preliminary Injunction Motion, without first seeking preliminary injunction–related discovery (expedited or otherwise) at the November 29 scheduling conference, and without first meeting and conferring with Plaintiffs per Federal Rule of Civil Procedure 26(d)(1). Nevertheless, Plaintiffs are making every effort to avoid discovery delay. Indeed, within hours of the Court's entry of a protective order on January 8, 2024, ECF No. 61, Plaintiffs began rolling document productions in response to Anthropic's document requests.

[3] As of the filing of this document, a subset of Plaintiffs began what they report will be a "rolling production" of documents responsive to Defendant's December 4, 2023 Requests for Production seeking information for use in opposition to their preliminary injunction motion.

*Bangas v. Potter*, 145 F. App'x 139, 141 (6th Cir. 2005); *see Bridgestone Ams., Inc. v. Int'l Bus. Machs. Corp.*, No. 3:13-CV-1196, 2016 WL 11786194, at *1 (M.D. Tenn. July 6, 2016) (collecting cases "illustrative of the wide discretion enjoyed by district courts in deciding whether to grant a stay of merits discovery while a dispositive motion is pending"). Courts in this District have recognized a stay of discovery is "particularly appropriate in a case where, as here, the Court's jurisdiction is in question." *Harmer v. Cannata*, No. 3:22-cv-00976, 2023 WL 2228985, at *1 (M.D. Tenn. Feb. 24, 2023) (granting stay of discovery pending resolution of motion to dismiss for lack of jurisdiction); *see also, e.g.*, *Solomon v. Solomon*, No. 3:21-0498, 2022 WL 1460364, at *1 (M.D. Tenn. Feb. 15, 2022) (staying discovery pending resolution of motion to dismiss under Rule 12(b)(1) because "in a case where jurisdiction is challenged, . . . should the Court find it has no jurisdiction and dismiss the action, the Defendants would have no need for the burden or expense of participating in the litigation" (internal quotations omitted)). Anthropic challenges the existence of personal jurisdiction over it in the Middle District of Tennessee. Until that issue is resolved, it is premature for the parties and this Court to expend the time and resources related to discovery. Accordingly, Anthropic continues to object to proceeding with general discovery and the litigation of this case in this court until the threshold issues of personal jurisdiction and venue have been resolved.

However, in the event the Court declines to order the parties to commence general discovery only after it has ruled on Anthropic's pending motion to dismiss, the parties jointly propose as follows.

E. **RESPONSIVE PLEADING:**

Defendant shall answer or otherwise respond to the claims in Plaintiffs' complaint no later than 30 days following this Court's ruling on Defendants' motion to dismiss for lack of personal

jurisdiction and improper venue, and in the alternative to transfer venue, subject to the terms of that ruling by the Court.

F.     INITIAL DISCLOSURES:

The parties shall exchange initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on or before **March 22, 2024.**

G.     CASE RESOLUTION PLAN AND JOINT STATUS REPORTS:

The parties shall develop a plan for resolution of the case that includes at least two independent attempts to resolve the case. The first attempt shall occur no later than 120 days from the initial case management conference, which is **May 10, 2024.** By no later than that date, the parties shall submit a joint report to advise the Court that the parties made a good faith effort to resolve the case. The report shall state the specific steps taken toward case resolution, including that an offer or demand has been made and responded to and that counsel have discussed the parties' positions. The parties shall have conducted enough discovery or otherwise exchanged sufficient information to evaluate and discuss settlement substantively. The fact that discovery is ongoing or that a dispositive motion is pending does not relieve the parties of this requirement. If the parties request referral for pro bono mediation or to a Magistrate Judge for a judicial settlement conference, they must make that request by motion. The motion shall include a statement as to why private mediation is not feasible and, if a judicial settlement conference is requested, why that is the preferable means of resolving the particular case. An updated joint report, including whether the parties have scheduled mediation or another form of ADR, shall be filed no later than 60 days before the deadline for the filing of dispositive motions.

The parties may request referral to a member of the Court's ADR Panel for pro bono mediation by filing a motion that states why private mediation is not feasible and why referral to a mediator will materially advance the resolution of the case.

H.   DISCOVERY:

The parties shall complete all written discovery and depose all fact witnesses on or before **November 22, 2024**. Written discovery shall proceed promptly (unless otherwise provided for herein), and may be served beginning on **March 22, 2024.** Discovery is not stayed during dispositive or other motions, unless ordered by the Court. As set forth above, Anthropic in this instance requests that discovery commence only after the Court rules on Anthropic's motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative to transfer venue. Plaintiffs see no basis for staying discovery, and request that discovery commence following the completion of the parties' briefings on the pending motions and no later than March 22, 2024.

No motions concerning discovery are to be filed until after counsel have spoken in a good faith effort to resolve any dispute(s). If the parties are unable to resolve a discovery dispute after conferring in good faith as required by the Court's Local Rule 37.01 and the District Judge's case management preferences, counsel shall file a motion for resolution of a discovery dispute to request a discovery dispute telephone conference. Not later than two days before the conference, the parties shall file a joint statement of the discovery dispute that states the particular requests or responses at issue, summarizes counsel's good-faith discussions, and briefly addresses the parties' positions. Each party's position statement shall be limited to no more than three pages per issue. The parties may attach documents for review that will be useful to the Court's understanding of the dispute. If the parties are unable to reach a resolution of the dispute after the conference, the Magistrate Judge will set a schedule for discovery motion briefing. If a party files a discovery motion before a discovery dispute conference has been held, the motion will likely be terminated.

All motions related to fact discovery shall be filed by no later than **November 22, 2024.**

I. **MOTIONS TO AMEND OR TO ADD PARTIES:**

Any motions to amend or to add parties shall be filed no later than **August 12, 2024.**

Any motion to amend must be accompanied by the proposed amended pleading, which shall be included as an exhibit to the motion. Before filing the motion to amend, counsel for the moving party shall discuss the proposed amendment with all other counsel and shall state in the motion to amend whether the motion is opposed. Any motion to amend must comply with Local Rules 7.01 and 15.01.

J. **DISCLOSURE AND DEPOSITIONS OF EXPERT WITNESSES:**

The parties shall identify and disclose all expert witnesses and exchange expert reports on or before **January 13, 2025.** The parties shall exchange opposition expert reports on or before **February 24, 2025.** The parties shall exchange optional reply expert reports on or before **March 17, 2025.** All expert witnesses shall be deposed on or before **April 25, 2025.**

K. **NEXT CASE MANAGEMENT CONFERENCE:**

The parties may request a case management conference by filing a motion that identifies all issues to be discussed and the parties' positions. If the parties request extensions of case management deadlines, they shall include all proposed extended deadlines in the motion. The parties shall state whether they request an in-person or telephonic conference.

L. **DISPOSITIVE MOTIONS:**

Dispositive or *Daubert* motions shall be filed by no later than **June 6, 2025.** Responses to dispositive or *Daubert* motions shall be filed by no later than **July 18, 2025**. Briefs or memoranda of law in support of or in opposition to such motions shall not exceed 30 pages. Optional replies may be filed on or before **August 8, 2025** and shall not exceed 15 pages without leave of court.

No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the Court. In all other respects, the provisions of Local Rule 56.01 shall govern.

**M.    ELECTRONIC DISCOVERY:**

The parties have reached agreement on how to conduct electronic discovery in this case, and therefore Administrative Order 174-1 need not apply. The parties' agreed-on ESI Protocol is attached as Exhibit A to this Proposed Initial Case Management Order.

**N.    MODIFICATION OF THE CASE MANAGEMENT ORDER:**

Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days before the earliest affected deadline. If the parties agree, the motion may be filed up to the earliest affected deadline. The motion must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether there is any objection to the motion. The motion (even if a joint motion) must also include: (i) all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(d)(2)(f) that no dispositive motion, including response and replies, be filed later than 90 days in advance of the target trial date.

**O.    REQUESTS TO SEAL DOCUMENTS:**

Any party requesting that documents or portions of documents be sealed must demonstrate compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons. The motion to seal, even if unopposed, must "analyze in detail, document by document, the

propriety of secrecy, providing reasons and legal citations." *Beauchamp v. Fed. Home Loan Mortg. Corp.*, No. 15-6067, 2016 WL 3671629, at *4 (6th Cir. July 11, 2016) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305–06 (6th Cir. 2016)). Protective orders should not provide that documents produced in discovery and designated as "confidential" will automatically be sealed upon filing or use at trial. Any such language in a proposed protective order will be stricken and may result in denial of the motion to enter the protective order.

P.   **ESTIMATED TRIAL TIME AND TARGET TRIAL DATE:**

The jury trial of this action is expected to last approximately **five (5) to ten (10)** days. A trial date no earlier than **November 11, 2025** is requested. The requested trial date and the dispositive motion deadline proposed in this Order conform to Local Rule 16.01(h)(1).

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

Dated: January 8, 2024

/s/ *Aubrey B. Harwell III*

Aubrey B. Harwell III (No. 017394)
Nathan C. Sanders (No. 33520)
Olivia R. Arboneaux (No. 40225)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: 615.244.1713
trey@nealharwell.com
nsanders@nealharwell.com
oarboneaux@nealharwell.com

Joseph R. Wetzel
Andrew M. Gass
(admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600
joe.wetzel@lw.com
andrew.gass@lw.com

Allison L. Stillman
(admitted *pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864
alli.stillman@lw.com

Sarang V. Damle
(admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200
sy.damle@lw.com

*Attorneys for Defendant*

Respectfully submitted,

/s/ *Steven A. Riley*

Steven A. Riley (No. 6258)
Tim Harvey (No. 21509)
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
Telephone: (615) 320-3700
sriley@rjfirm.com
tharvey@rjfirm.com

Matthew J. Oppenheim
Nicholas C. Hailey
Audrey L. Adu-Appiah
(admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com
aadu-appiah@oandzlaw.com

Jennifer Pariser
Andrew Guerra
Timothy Chung
(admitted *pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com
tchung@oandzlaw.com

Richard S. Mandel
Jonathan Z. King
Richard Dannay
COWAN, LIEBOWITZ & LATMAN, P.C.
(admitted *pro hac vice*)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2024, I authorized the electronic filing of a true and exact copy of the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to counsel of record.

/s/ *Steven A. Riley*
Steven A. Riley