# EXHIBIT A

| From: | Wetzel, Joe (Bay Area) |
|---|---|
| Sent: | Tuesday, January 16, 2024 3:04 PM |
| To: | Nick Hailey; Gass, Andrew (Bay Area); Benyamin, Franco (NY) |
| Cc: | Matt Oppenheim |
| Subject: | RE: Anthropic Litigation: Request for Data |

Nick:

We hope that our opposition papers served later today will shed some light on how Anthropic's technology and guardrails against outputting copyrighted materials work. Your email, for example, seems to misunderstand that providing Anthropic with the titles to Plaintiffs' works, as opposed to the works themselves, would facilitate Anthropic's improvement of its existing guardrails. We are happy to discuss these issues further once you have had an opportunity to review today's submission. To be clear, Anthropic reserves its defenses to Plaintiffs' suit, including that the use of copyrighted works as training materials for LLMs like Claude is a fair use under US copyright law.

Best,

Joe

**Joe Wetzel**
Pronouns: He/Him/His

**LATHAM & WATKINS LLP**
505 Montgomery Street | Suite 2000 | San Francisco, CA 94111-6538
D: +1.415.395.8007 | M: ████████████

**From:** Nick Hailey <Nick@oandzlaw.com>
**Sent:** Friday, December 22, 2023 12:41 PM
**To:** Gass, Andrew (Bay Area) <Andrew.Gass@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>; Benyamin, Franco (NY) <Franco.Benyamin@lw.com>
**Cc:** Matt Oppenheim <Matt@oandzlaw.com>
**Subject:** Re: Anthropic Litigation: Request for Data

Andy,

Your self-serving email completely distorts the record of what has transpired, and if you intend to attach your email to Defendant's Opposition to Plaintiffs' Preliminary Injunction Motion, we insist that you also attach this response.

We have gone above and beyond in trying to cooperate with Anthropic to stop its ongoing infringement of Plaintiffs' copyrighted works. From the beginning, we have been transparent about our serious concerns over Anthropic's infringement and the specific relief we intended to seek in our Preliminary Injunction Motion. What's more, when you asked for a list of our clients' catalogs of works, we accommodated that request, both by providing spreadsheets with specific lists of works and also by pointing you to the publicly available Mechanical Licensing Collective database, in the hopes that you would use that information to address Anthropic's ongoing infringement.

By contrast, Anthropic continues to operate under the cloak of darkness. You have refused to disclose the data upon which Anthropic trains its AI models or to identify Plaintiffs' copyrighted works included in that data. Likewise, you have declined to provide any information about the "guardrails" you claim to have implemented. How can we engage in a

productive dialogue with you given Anthropic's continued refusal to provide even basic information about the ways it has and continues to exploit our clients' copyrighted works?

Accordingly, we reiterate our request that you answer the following basic questions:

You broadly claim that Anthropic has now "solved the problem" of infringing outputs, and that Anthropic has "no interest in having its model output song lyrics." But without any explanation or evidence of what steps Anthropic has taken to supposedly prevent infringing output, we have no way of evaluating your claims. Will Anthropic disclose precisely what it has done to prevent Plaintiffs' lyrics, in full or in part, from ever appearing in any output generated by Anthropic's AI models? We previously asked for Anthropic to describe what guardrails it intended to implement, how they would be implemented, and to what specific queries and output they would apply, so that we could evaluate their effectiveness. You never responded. If you actually want to have a dialogue, please respond to our questions.

Beyond the works in suit, we have also now identified our clients' broader set of copyrighted works that should be subject to an injunction. What steps, if any, have you taken to prevent Anthropic's AI models from infringing these works in their output?

Moreover, as is clear from our Preliminary Injunction Motion, the relief we are seeking is not limited to infringing outputs only—rather, the issue with Anthropic's unauthorized use of Plaintiffs' lyrics begins with Anthropic's training its AI models on those lyrics without authorization. Will you please explain why it is so critical to Anthropic that it should be permitted to copy Plaintiffs' lyrics for use in its training data if it never intends to output those lyrics, as you claim?

Will Anthropic commit to excluding Plaintiffs' works from its training data for AI models going forward?

We are absolutely willing to work with Anthropic to address its infringement of Plaintiffs' copyrighted works, and we welcome further discussion to that end. But we will not allow you to circumvent the critical relief we seek or delay the process through self-serving efforts to create a misleading record. We can engage in a productive dialogue after you answer the basic questions above.

Thank you,

Nick


Nick Hailey
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
Nick@oandzlaw.com | www.oandzlaw.com
Connect with us on LinkedIn


**From:** Andrew.Gass@lw.com <Andrew.Gass@lw.com>
**Date:** Wednesday, December 20, 2023 at 3:55 PM
**To:** Nick Hailey <Nick@oandzlaw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>, Franco.Benyamin@lw.com <Franco.Benyamin@lw.com>
**Cc:** Matt Oppenheim <Matt@oandzlaw.com>
**Subject:** RE: Anthropic Litigation: Request for Data

Nick and Matt:

We reached out to you to see if your side would be willing to work with ours collaboratively, and irrespective of the merits of any preliminary injunction motion, to build the "guardrails" that you indicated you would be seeking in your motion. We asked if you would be interested in discussing with us what information would be useful to that task and working cooperatively to address your concerns. You never responded to our question, and instead pointed us to a publicly available list of songs that your clients contend they control the rights to, and promised at some later time to send us the list. You then went ahead and filed your motion anyway, seeking precisely the relief we had offered to work with you to achieve. We then went ahead and solved the problem anyway, with respect to the works in suit. Under the circumstances, there was nothing for us to respond to.

The broader offer still stands though: if you would like to have a serious conversation about cooperating with Anthropic to help forestall the alleged output-related harm that you contend in your motion is irreparable, we are happy to have that discussion. We say that, even though we believe your motion lacks merit, because fundamentally Anthropic has no interest in having its model output song lyrics that your publishers claim to own. There are other substantive issues in the case on which we disagree—for example, whether it is actionable copyright infringement to use pre-existing content to train a generative AI model on the mechanisms of how human language works, in the service of generating non-infringing outputs. But the conversation we were attempting to start, which you still have not joined us in, is whether on the issues where we are aligned, you would like to work with us to get your clients what you've now said they will be irreparably harmed if they don't get. If so, great—we're happy to have that conversation in earnest.

Best,

Andy


Andrew Gass

**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Direct Dial: +1.415.395.8806
Email: andrew.gass@lw.com
https://www.lw.com

---

From: Nick Hailey <Nick@oandzlaw.com>
Sent: Tuesday, December 12, 2023 6:26 AM
To: Gass, Andrew (Bay Area) <Andrew.Gass@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>; Benyamin, Franco (NY) <Franco.Benyamin@lw.com>
Cc: Matt Oppenheim <Matt@oandzlaw.com>
Subject: Re: Anthropic Litigation: Request for Data

Andy and Joe,

We are following up on the email chain below, to which you have not responded.

First, in addition to the specific works identified in Exhibit A to the complaint, we are providing spreadsheets with lists of our clients' current works. Because those files are too large to send by email, you may access them via fileshare here.

We are providing these spreadsheets on the condition that Anthropic will not redistribute these files or use them for any purpose other than avoiding infringing our clients' works.

Note that these spreadsheets provide only a limited snapshot of our clients' works that should be subject to an injunction, and that those catalogs are constantly being updated. It is for these reasons that we previously directed you to the Mechanical Licensing Collective (MLC), which maintains on its website a publicly accessible database of copyrighted musical works that can be searched to identify, among other things, individual publishers' full catalogs of copyrighted works, and to which we invite you to refer on an ongoing basis.

In addition, we write to follow up on certain outstanding questions to which you have not responded:

- If Anthropic intends to implement so-called guardrails based on the lists of Plaintiffs' works, as you claim, we will need to understand exactly what those guardrails are, how they have been implemented, and to what specific queries and output they apply, so that we can evaluate to what degree they are actually effective in preventing infringing output.

- We previously requested that Anthropic share an inventory of the lyrics it has used as training data. You have not responded to that request. We again invite you to provide that information, so that we can analyze it and assist Anthropic to avoid infringing Plaintiffs' works going forward in training its LLMs.

Thanks,

Nick


Nick Hailey
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
Nick@oandzlaw.com | www.oandzlaw.com
 Connect with us on LinkedIn

---

**From:** Matt Oppenheim <Matt@oandzlaw.com>
**Date:** Tuesday, November 14, 2023 at 5:52 PM
**To:** Andrew.Gass@lw.com <Andrew.Gass@lw.com>
**Cc:** Nick Hailey <Nick@oandzlaw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Subject:** Re: Anthropic Litigation: Request for Data

Andy –

Your email retelling of our back and forth dialog is neither accurate nor productive. In an effort to move the conversation forward, there are two key components of what we discussed that are critically omitted from your email.

First, the issue with Anthropic's unauthorized use of Plaintiffs' copyrighted works begins with what Anthropic uses as training material for its AI models. It is that copying process that ultimately leads to Anthropic's improper inclusion of lyrics in its AI model output. We have asked Anthropic to share what it has used as training data so we can analyze it, and assist Anthropic to avoid using Plaintiffs' works going forward in training its LLMs. Anthropic has not responded to that request. We welcome Anthropic's provision of this information.

Second, as you know and we previously indicated, the law does not require a copyright owner to provide lists of works to parties to indicate what they own and what not to infringe. Anthropic has an independent obligation to not infringe, and given the scale of the problem, should solve the issue comprehensively. It was in that vein that we referred you to the publicly available database at MLC.

Your email seeks to paint a picture that Plaintiffs are unwilling to provide a list of works that should be the subject of an injunction. That is not accurate. We are happy to provide just such a list, and will do so shortly. Anthropic may use that list to both avoid using any of those works in its training materials, and provide guardrails to prevent the distribution/publication of the works for its existing model.

If Anthropic implements guardrails based on our lists of Plaintiffs' works, as you claim, we will need to understand exactly what those guardrails are, how they have been implemented, and to what specific queries and output they apply, so that we can evaluate whether they are actually effective in preventing infringing output. And, of course, regardless of the guardrails you may install, none of that resolves the critical underlying issue of Anthropic's unauthorized exploitation of Plaintiffs' works as training data.

Let me know if you have any questions.

Matt

Matthew J. Oppenheim
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
Matt@oandzlaw.com | **www.oandzlaw.com**
 **Connect with us on LinkedIn**



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

---

**From:** Andrew.Gass@lw.com <Andrew.Gass@lw.com>
**Date:** Monday, November 13, 2023 at 7:58 PM
**To:** Matt Oppenheim <Matt@oandzlaw.com>
**Cc:** Nick Hailey <Nick@oandzlaw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Subject:** RE: Anthropic Litigation: Request for Data

Matt:

Thanks for your response. To reprise where we are here:

- You and I spoke on Monday, October 30 about the PI motion Plaintiffs intend to file. In that conversation, you told me that one form of relief to be sought in that motion would be an order with respect to the outputs of Anthropic's AI product, requiring "effective guardrails" to ensure that those outputs would not in the future contain any copyrighted content not just from the works in suit, but from any songs Plaintiff publishers

control.  In response to my question about how Anthropic would comply with such an order with respect to that particular form of relief, you told me you imagined that your clients would, down the line, provide Anthropic with information in a suitable digital format so that Anthropic would know precisely what content should be the subject of the contemplated "effective guardrails."

- I came back to you a week later, on Monday, November 6, and told you that we are happy to work with you on this irrespective of the motion you are threatening to file. Put differently, Anthropic welcomes collaboration with your clients to ensure that not just the content of the works in suit, but also any other content of the songs they control, is not contained in outputs of Anthropic's AI products. And so I asked whether we could simply begin the process of sorting out what data it makes sense to share in the service of that outcome.

- You responded the following Friday, November 10, with the message below—the substance of which seems to be that your clients are in fact not willing to share with Anthropic any information at all regarding the full suite of works for which Plaintiffs are demanding "guardrails." The balance of your message is not responsive to the question I posed.

I certainly cannot force you to engage in this process. But it is disappointing to see that your clients are not willing to work with Anthropic in the hope of trying to forestall harm that you will evidently be contending is irreparable. We will do our best regardless, without your side's cooperation, and I am confident that before the motion is resolved, Anthropic will have done all it can without Plaintiff's cooperation to build the "guardrails" Plaintiffs intend to seek in their motion.

Andy

**From:** Matt Oppenheim <Matt@oandzlaw.com>
**Sent:** Friday, November 10, 2023 12:40 PM
**To:** Gass, Andrew (Bay Area) <Andrew.Gass@lw.com>
**Cc:** Nick Hailey <Nick@oandzlaw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Subject:** Re: Anthropic Litigation: Request for Data

Andy:

We appreciate your email.  As we discussed on the phone, our clients intend to seek preliminary injunctive relief beyond "effective guardrails" around the output for Anthropic's AI.  Critically, Anthropic needs to cease and desist from copying any of Plaintiffs' works for any future AI model beyond the existing Claude 2 model.  If Anthropic is willing to commit to this going forward, please let us know.

 As for your request that we supply you with a comprehensive list of our clients' works against which to apply guardrails, it is not incumbent on copyright owners to "opt out" of another party's use of their works, including by supplying a database of those works to others.

Nevertheless, and without any prejudice to our clients' PI motion, we are happy to work with you to mitigate the damage currently being caused to our clients by Anthropic. In this regard, it may be easier for us to identify which of our clients' works are at issue if Anthropic is able to provide us with an inventory of lyrics used to train Anthropic's AI so we can then identify those owned by our clients.  This type of disclosure might facilitate a cooperative dialog along the lines Anthropic may be seeking.

Beyond that, we can direct you towards the Mechanical Licensing Collective to provide information regarding the ownership of compositions, including all of our clients' works. (https://www.themlc.com). MLC has a searchable database for compositions, and can work with large digital providers, such as Anthropic.

We look forward to hearing from you on this.

Matt


**Matthew J. Oppenheim**
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue, NW | 5th Floor
Washington, DC 20016
202.450.3958 direct ▊▊▊▊▊▊▊ mobile
matt@oandzlaw.com |www.oandzlaw.com
Follow Oppenheim + Zebrak on Twitter

This e-mail and any attachments may contain information that is private, confidential, and/or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it without copying, reviewing or distributing any portion and notify sender.


**From:** Andrew.Gass@lw.com <Andrew.Gass@lw.com>
**Date:** Monday, November 6, 2023 at 11:15 AM
**To:** Matt Oppenheim <Matt@oandzlaw.com>
**Cc:** Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Subject:** Anthropic Litigation: Request for Data

Matt:
When you and I spoke last week, you mentioned that Plaintiffs intend to seek several forms of relief in their motion for a preliminary injunction, one of which would be an order requiring what I believe you termed "effective guardrails" to ensure that the AI tool at issue does not generate outputs that contain your clients' copyrighted content. We had an exchange in which I asked you to clarify whether you meant just the works in suit, or something broader; and you confirmed that you meant something broader—to wit, all the songs in their catalogues. I asked how we would know what that content consists of, beyond the works in suit, and you responded that at an appropriate time, you imagined there would be a data exchange in which your clients would deliver to Anthropic the requisite information in a suitable electronic format.
I reported our discussion back to Anthropic, and they would in fact be happy to work with you all on this irrespective of any PI motion, its merits, or how it is resolved. In fact, if your side can timely supply the necessary data, it's well within the realm of possibility that we could get guardrails of the type you described in place before your motion is filed.
Can you please let me know if your clients would be willing to work with us on this?
Thanks very much for your prompt attention. We can begin to sort out the technical details as soon as you revert with a willingness to help get us the information Anthropic will need to give your clients the "guardrail"-related relief they seek.
Best,
Andy
w: 415.395.8806
c: ▊▊▊▊▊▊▊

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission

7
Case 3:23-cv-01092    Document 67-22    Filed 01/16/24    Page 8 of 9 PageID #: 3249

is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at [www.lw.com](www.lw.com).