IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL., *Plaintiffs*, v. ANTHROPIC PBC, *Defendant*. | Case No. 3:23-cv-01092 Chief Judge Waverly D. Crenshaw, Jr. Magistrate Judge Alistair Newbern |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE RECORDING INDUSTRY ASSOCIATION OF AMERICA, NATIONAL MUSIC PUBLISHERS' ASSOCIATION, THE ASSOCIATION OF AMERICAN PUBLISHERS, INC., NEWS/MEDIA ALLIANCE, SONGWRITERS OF NORTH AMERICA, BLACK MUSIC ACTION COALITION, MUSIC ARTISTS COALITION, ARTIST RIGHTS ALLIANCE, AND AMERICAN ASSOCIATION OF INDEPENDENT MUSIC FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Fed. R. Civ. P. 7 and Local Rule 7.01, Recording Industry Association of America ("RIAA"), National Music Publishers' Association ("NMPA"), the Association of American Publishers, Inc. ("AAP"), News/Media Alliance, Songwriters of North America ("SONA"), Black Music Action Coalition ("BMAC"), Artist Rights Alliance ("ARA"), the Music Artists Coalition ("MAC"), and American Association of Independent Music ("A2IM") (collectively, "*Amici*"), respectfully submit this memorandum of law in support of their motion (the "Motion") for leave to file a brief as *amici curiae* (the "Brief") in support of the plaintiffs' motion for preliminary injunction (the "Preliminary Injunction Motion," ECF No. 40 *et seq.*) and in response to various policy and other arguments made by defendant Anthropic PBC ("Anthropic") and by putative *amici* Chamber of Progress and NetChoice, LLC (together, "COP") in opposing the Preliminary Injunction Motion. The Brief is annexed to the Motion as Exhibit A.

Counsel for *Amici* conferred with counsel for the parties regarding the relief requested by this motion. Anthropic opposes the requested relief.[1] Plaintiffs consent to the requested relief in the event the Court grants COP's request for leave to file its *amicus* brief.

## INTERESTS OF *AMICI CURIAE*

*Amici* are trade groups representing owners and creators of some of this country's most valuable copyrighted content.

RIAA is a nonprofit trade organization that supports and promotes the creative and financial vitality of recorded music and the people and companies that create it. RIAA's several hundred members – ranging from major American music companies with global reach to artist-owned labels and small businesses – make up this country's most vibrant and innovative music community. RIAA's members create, manufacture, and/or distribute sound recordings representing the majority of all legitimate recorded music consumption in the U.S. and own the copyrights and/or other exclusive rights in sound recordings embodying the performances of some of the most popular and successful recording artists of all time. RIAA has been actively involved in representing the interests of its members as they relate to artificial intelligence ("AI") issues, including by recently submitting comments to the U.S. Copyright Office on such issues.

NMPA is the principal trade association representing the U.S. music publishing and songwriting industry. NMPA's membership includes "major" music publishers affiliated with large entertainment companies as well as independently owned and operated publishers of all sizes representing musical works of all genres. Taken together, compositions owned or controlled by

---

[1] Anthropic stated that it opposed the relief because it would not have an opportunity to respond to the Brief. But COP filed its motion seeking leave to file its *amicus* brief several days after Anthropic had filed its opposition to the Preliminary Injunction Motion. Accepting Anthropic's argument would mean that arguments raised in an *amicus* brief submitted in support of a party opposing a motion could never be responded to by other *amici* with differing interests.

NMPA's hundreds of members account for the vast majority of musical compositions licensed for commercial use in the U.S. NMPA has been actively engaged in the conversation around generative AI and its relationship with, and impact on, the creative economy. It is a founding member of the Human Artistry Campaign, and has participated in numerous panels, roundtables and other industry discussions, and submitted comments to the Copyright Office on AI and copyright.

AAP represents book, journal, and education publishers in the U.S. on matters of law and policy, including major commercial houses, small and independent houses, and university presses and other noncommercial scholarly publishers. AAP seeks to promote an effective and enforceable framework that enables publishers to create and disseminate a wide array of original works of authorship to the public on behalf of their authors. AAP members support and embrace innovation, including responsibly designed AI tools that are accountable, transparent, and respect copyright protections. The works AAP members publish are especially valuable to training generative AI systems, including because they provide high quality expression that results in commercially valuable, expressive output. AAP has been actively involved in representing the interests of its members as they relate to AI issues, and recently submitted comments to the Copyright Office on such issues.

The News/Media Alliance represents over 2,200 diverse publishers in the U.S. and internationally, ranging from the largest news and magazine publishers to hyperlocal newspapers, and from digital-only outlets to papers who have printed news since before the Constitutional Convention. Its membership creates quality journalistic content that accounts for nearly 90 percent of daily newspaper circulation in the U.S., over 500 individual magazine brands, and dozens of digital-only properties. The Alliance diligently advocates for newspapers, magazine, and digital

publishers, and like the other *amici*, has been active on AI issues, including publishing a White Paper documenting systemic uses of media content in generative AI training, participating in the U.S. Senate's AI Insight Forum, leading the development of publisher AI principles, and submitting comments to the Copyright Office on AI and copyright.

SONA is a membership-based advocacy organization formed by and for professional songwriters in 2015. SONA advocates on behalf of songwriters' interests before legislative bodies, administrative agencies, and the courts. SONA is an open and diverse community that unites enthusiastic music creators and thoughtful business leaders to create a unified voice to protect artistic expression, compensation, and the rights of songwriters in North America. Regarding AI, SONA represented its members by participating in the recent U.S. Copyright Office Listening Sessions, submitting comments for the Office's recent Notice of Inquiry on AI, and is an active member of the Human Artistry Campaign. SONA continues to advocate for and educate songwriters about AI developments as they relate to songwriters' rights.

BMAC works to create a unified force of action for racial equity and justice within the music industry and to use the power of its collective voice to improve communities and drive systemic change. BMAC advocates on behalf of Black artists, songwriters, producers, managers, agents, executives, and lawyers to create access, equity and opportunity for Black artists and industry professionals. BMAC works together with business leaders to hold companies accountable and ensure change takes root. BMAC works to drive policy change around social and racial justice and protection of artists with a focus on causes that directly impact Black people and Black communities. Regarding AI, BMAC advocates on behalf of a network of music managers, entertainment attorneys, and Black creatives, and is a member of the Human Artistry Campaign. It also participated in drafting comments on the U.S. Copyright Office's recent Notice of Inquiry

4

on AI and participated in that Office's Informational Sessions. In its ongoing fight for economic justice, AI is at the forefront of BMAC's agenda.

MAC was founded by music creators and industry leaders to advocate on pressing topics that impact music creators. MAC represents artists' and songwriters' interests without compromise because music creators should be driving the conversation about the issues that shape their lives. MAC believes artists should have the opportunity to decide how to best protect the fate of their music, their rights and their fans, and that the advancement of AI can be a benefit to music creators and music lovers, but only if properly regulated so that artists' interests are protected.

ARA is an artist-run, non-profit organization fighting for the rights of working musicians in the modern music economy. Co-founded by a group of dedicated artists including GRAMMY winner Rosanne Cash, ARA's Board of Directors includes award-winning producer/songwriter/engineer Ivan Barias, music manager Thomas Manzi, John McCrea of CAKE, critically-acclaimed singer/songwriter Tift Merritt, world guitar innovator Matthew Montfort, and Indie label executive and musician Maggie Vail.

A2IM is a 501(c)(6) not-for-profit trade organization headquartered in New York City that exists to support and strengthen the independent recorded music sector and the value of recorded music copyrights. Membership currently includes a broad coalition of hundreds of independently owned American music labels. A2IM represents these independently owned small and medium-sized enterprises' interests in the marketplace, in the media, on Capitol Hill, and as part of the global music community. In doing so, it supports a key segment of America's creative class that represents America's diverse musical and cultural heritage. Billboard Magazine identified the independent music label sector as over 40% of the music industry's global recorded music revenue in 2020 based on copyright ownership.

# ARGUMENT

The decision of whether to permit an *amicus* brief rests within the "sound discretion" of the Court. *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991). As the Sixth Circuit has observed, courts may permit briefing by *amici* deemed "useful" or "otherwise necessary to the administration of justice." *Id.* (noting that permitting participation by proposed *amici* is within the Court's "sound discretion"); *see also Shoemaker v. City of Howell*, 795 F.3d 553, 562 (6th Cir. 2015) (*amici curiae* traditionally "supplement[] the efforts of private counsel and … draw[] the court's attention to law that might otherwise escape consideration") (citation and quotation marks omitted). *Amicus* briefs can provide "valuable assistance" to courts, including by "collect[ing] background or factual references," offering the perspective of "entities with particular expertise," or "explain[ing] the impact a potential holding might have on an industry or other group." *Neonatology Assocs., P.A., v. C.I.R.*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.); *see also New Mexico Oncology and Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1176 (10th Cir. 2021) (granting leave to file *amicus* briefs that addressed the impact of jurisprudence on an industry and "provide[d] more information about the Defendants' practices").

While no Federal Rule of Civil Procedure or Local Rule addresses *amicus* briefs, this Court recently granted leave to file an *amicus* brief in another case involving the Copyright Act and technology, *see Eight Mile Style, LLC. V. Spotify USA Inc.*, Civ. Case No. 19-CV-00736 (M.D. Tenn. Jan. 22, 2024) (ECF No. 470), and it has accepted *amicus* briefs in other cases as well. *See Newcomb v. Allergy and ENT Assocs. of Middle Tenn., P.C.*, No. 3:10–cv–1230, 2013 WL 3976627, at *1 (M.D. Tenn. Aug. 2, 2013); *Caremark, Inc. v. Goetz*, 395 F. Supp. 2d 683, 684 (M.D. Tenn. 2005); *see also Verble v. Morgan Stanley Smith Barney, LLC*, No.: 3:15-CV-74-TAV-CCS, 2015 WL 12930320, at *1 (E.D. Tenn. Apr. 9, 2015). When granting leave in the *Newcomb* case, the Court observed, consistent with the Circuit authority noted above, that *amicus*

6

Case 3:23-cv-01092   Document 103   Filed 02/14/24   Page 6 of 8 PageID #: 4278

briefs are appropriate, in among other cases, where "the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Newcomb v. Allergy and ENT Assocs. of Middle Tenn., P.C.*, 2013 WL 3976627, at *1.

*Amici* respectfully submit that the Brief they hereby seek leave to file is useful to the Court's consideration of the issues raised by the Preliminary Injunction Motion, by Anthropic in its opposition to that motion, and by putative *amici* COP in support of Anthropic's opposition to that motion.[2]

In their Brief, the *Amici* trade groups representing hundreds of owners and creators of valuable copyrighted content: (1) provide market context and historical background showing that copyright law principles are compatible with technological progress, that Anthropic's competitors are licensing copyrighted content for use in their AI products, and that artificial intelligence can reach its full potential while respecting the rights of creators and owners of copyrighted works; (2) explain how the limited preliminary injunction that plaintiffs have sought is particularly appropriate where Anthropic has admitted many of the facts that are fundamental to the Preliminary Injunction Motion, the Court can apply well-established copyright principles to such admitted facts, Anthropic cannot plausibly claim harm from the requested injunction, and there is no need to await discovery or decisions in other AI cases filed in other jurisdictions by other plaintiffs against other defendants; and (3) refute COP's argument that the limited injunction sought by plaintiffs "poses a substantial threat to the public interest in development and availability of AI technology" (Memorandum of Law in Support of Motion of Chamber of Progress and NetChoice, LLC for Leave to File Brief of *Amici Curiae* in Opposition to Plaintiffs' Motion for

---

[2] The Brief addresses many of the same issues (but from the perspective of owners and authors of copyrighted content) and is approximately the same length as COP's brief, apart from the necessity of including a relatively longer statement of interests, given the greater number of *Amici* herein.

Preliminary Injunction, at 3), and show that, rather, the public interest is best served by granting the Preliminary Injunction Motion before the harm from Anthropic's platform to the creators, owners, and licensees of copyrighted content, including those represented by *Amici*, is further entrenched or compounded.

Accordingly, *Amici* submit that their Brief will be useful to the Court, and is also "timely," as it responds to the positions set forth in Anthropic's and COP's recent submissions, and its acceptance will not result in delay of the proceedings. *See Michigan*, 940 F.2d at 165. Additionally, to the extent the Court grants COP's motion for leave to file its *amicus* brief, the Court should likewise grant this motion for the same reasons and to allow *Amici* to provide a counterpoint to the arguments raised by COP.

## CONCLUSION

For the foregoing reasons, *Amici* respectfully request that the Court grant them leave to file the Brief of *Amici Curiae* annexed to the Motion as Exhibit A.

Dated: February 14, 2024      Respectfully submitted,

  /s/ Lauren Kilgore
Lauren Kilgore
SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP
1 Music Circle South, Suite 300
Nashville, Tennessee 37203
(615) 329-4440
Lkilgore@shackelford.law

Frank P. Scibilia (*pro hac vice* admission pending)
Maya Katalan (*pro hac vice* admission pending)
PRYOR CASHMAN LLP
7 Times Square, 40th Fl.
New York, NY 10036
(212) 421-4100
fscibilia@pryorcashman.com
mkatalan@pryorcashman.com

*Counsel for Amici*